IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ROBERT ADAMS,<br>Petitioner,<br>vs.<br>RON BARNES, Warden,[*] *et al.*,<br>Respondent. | Case No. 2:05-cv-01056 JKS<br><br>ORDER |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He seeks to challenge his 2003 conviction for first degree burglary with a prior conviction. He alleges relief is warranted on the grounds that: (1) there was insufficient evidence of his intent to support the jury's verdict; (2) his right to due process was violated by a modified jury instruction on other crimes evidence; (3) his right to due process was violated by a modified jury instruction on consideration of prior crimes; (4) his trial counsel rendered ineffective assistance of counsel by failing to object to the modified jury instructions; (5) the trial court deprived him of his right to counsel by denying Petitioner's *Marsden* motion; (6) trial counsel rendered ineffective assistance by persuading Petitioner to testify in his defense; (7) the trial court violated Petitioner's *Miranda* rights by failing to inform him of them prior to his trial testimony; and (8) he was denied a fair trial when his trial counsel placed a lemon on the table next to Petitioner. Docket No. 25, Attach. 1 (Third Amended Pet.). Respondent asserts that Petitioner's arguments fail on the merits. Docket No. 34. Petitioner has filed a Traverse. Docket Nos. 36 (Trav.); 37 (Mem.).

[*] Ron Barnes is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

In an unpublished opinion filed on October 27, 2004, the California Court of Appeal, Third Appellate District, summarized the factual background of the offense and trial:

> On September 19, 2002, as the victim returned home around 6:15 p.m., she heard a rustling of the vertical blinds near the rear sliding glass door and discovered the door was open. Money totaling about $80 to $100 was missing from an envelope and glass jar in her kitchen. Nothing was disturbed in the rest of the house. There were “jimmy marks,” which the victim believed were new, on a side door to the garage and on the sliding back door. Defendant's fingerprints were found on the glass jar.
>
> Defendant testified at trial. He admitted he entered the victim's home but said he did so seeking shelter, without intent to steal. He was homeless. He had been walking the streets when he felt pain in his spleen (which he previously ruptured in a bicycle accident), and he was ready to collapse. He entered the victim's home through an unlocked door. After resting on the floor, he washed his face and wet his hair in the kitchen sink. (The victim testified she did not notice any water around the sink.)
>
> Defendant said he then saw the glass jar and envelope with money, and he took the money.
>
> Defendant admitted he had a prior conviction for burglary (in 1990). Defendant also said he has trespassed on other people's property for shelter without stealing anything. One such property was an unoccupied house where defendant stayed for four or five months. After the owner found out, defendant was charged with vandalism, based on a broken window that defendant did not break. Another property was a home for rent behind a hospital where defendant's father was recovering from a stroke. Defendant stayed there for four days until police arrested him on a burglary charge. (Citing the probation report but no trial evidence, defendant asserts the charge was dismissed.)
>
> The jurors in this case were instructed that, in order to find defendant guilty of burglary under section 459, they must find (1) a person entered a building or residence, and (2) “At the time of the entry, that person had the specific intent to steal and take away someone else's property, and intended to deprive the owner permanently of that property.
>
> The jury found defendant guilty of first degree burglary. The trial court found true a prior conviction allegation based on the 1990 burglary conviction. The court sentenced defendant to nine years in prison as follows: The low term of two years for burglary, doubled to four years under the three strikes law (§§ 667, subd. (b)-(i), 1170.12), and a five-year enhancement under section 667, subdivision (a).

*People v. Adams*, No. C043704, 2004 WL 1663960, *1 (Cal. Ct. App. July 27, 2004).

Petitioner appealed his conviction, arguing that the modified CALJIC 2.50 instruction violated his right to due process and that his counsel was ineffective for objecting to the instruction. Lodged Document No. 1. The Court of Appeal affirmed the conviction in a reasoned opinion issued July 27, 2004. *Adams*, No. C043704, 2004 WL 1663960, *4. Petitioner sought review from the Supreme Court of California, making the same eight arguments found in the instant petition. Lodged Document No. 5. The Supreme Court denied review without comment on October 27,

2004. *People v. Adams*, No. S127968, Slip Op. at 1 (Cal. Oct. 27, 2004). The original federal petition was timely filed on May 27, 2005. Docket No. 1. The Court is now proceeding on Petitioner's third amended petition. Docket No. 25, Attach. 1.

**LEGAL STANDARD**

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. *See Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). A federal writ is not available for an alleged error in the interpretation or application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000); *Middleton*, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues *de novo*. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972).

Because the instant petition was filed after April 24, 1996, any claim therein that was adjudicated by a state court on the merits is governed by the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Where a state court has adjudicated the merits of a petitioner's claim, this Court, under AEDPA, may not grant relief unless the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." *Id*. To qualify as "unreasonable," it must be objectively unreasonable, a substantially higher threshold than merely incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939 (2007).

Clearly established federal law refers only to the holdings of the Supreme Court's decisions in effect at the time of the relevant state-court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006). In the absence of an applicable holding of the Supreme Court, it cannot be said that a state court decision is contrary to or an unreasonable application of clearly established federal law. *See id*. at 77. Finally, even if the AEDPA standard is satisfied, the Court cannot grant relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *Fry v. Pliler*, 127 S. Ct. 2321, 2326-27 (2007) (*Brecht* standard continues to apply after enactment of AEDPA).

In applying this standard, a federal district court looks to the last reasoned state court decision as the basis for the state court judgment. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). The Court presumes that the state court's findings of fact are correct, unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Where a state court has "silently denied" a claim on the merits without explaining its *ratio decidendi*, a district court independently reviews the record to determine if the denial was an unreasonable application of clearly established federal law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000); *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006).

**DISCUSSION**

I - Sufficiency of the Evidence

Petitioner alleges there was insufficient evidence of his intent to steal to support the jury's verdict. Respondent argues that the California Supreme Court's denial of this claim was not an unreasonable application of clearly established federal law because Petitioner's version of events was implausible in light of the jimmy marks on the door and the absence of water around the kitchen sink. Respondent submits that it was inappropriate to refer to the jimmy marks on the sliding glass door because the trial court struck that testimony from the record. Docket No. 37 at 15.

The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original). Because the Supreme Court of California denied this claim

without a reasoned decision, this Court must independently review the record to determine if that denial was an unreasonable application of *Jackson*.

Petitioner is correct that the victim's testimony regarding "jimmy" marks on the sliding glass door was stricken as hearsay. Reporter's Transcript ("RT") at 47-48. However, there was still ample evidence from which the jury could have inferred that the Petitioner had an intent to steal at the time he entered the victim's residence. Petitioner mistakenly believes it is within the purview of this Court to reassess the credibility of witnesses and ultimately reweigh the evidence. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law. That such evidence exists is clearly established by the record in this case.

First, there was evidence supporting the contention that Petitioner forced his entry into the home. The victim testified that there were fresh jimmy marks on the side door into the garage. RT at 46, 58. She testified that she locked the sliding glass door before leaving for work. RT at 59. She testified that after Petitioner's entry into her home the frame around the sliding glass door was "jarred loose a little bit but not splintered." RT at 59. While Petitioner testified that he "just moved [his] hands from the glass door and it just slid open," the Court must view the evidence in the light most favorable to the prosecution. *See* RT at 106. In that light, the Court infers that Petitioner forced entry into the home.

Second, the evidence belies Petitioner's story that he entered the home only to rest. Petitioner testified that near collapse he walked through an open gate, entered the residence through a door that just "slid open," laid down on the floor for 20 minutes, washed his face and wetted his hair in the kitchen sink, and then noticed the money and formed the intent to steal. RT at 104-08. The victim testified that the gate was closed with a piece of bailing wire, the door was closed and locked, and there was no water around the sink when she got home. RT at 45-53. Petitioner points out that the water around the sink could have evaporated by the time the victim arrived home. Docket No. 37 at 15. Again, this argument fundamentally misunderstands the Court's role in reviewing a sufficiency of the evidence claim on habeas review. The Court does not reweigh the evidence. There was ample evidence upon which the jury could have concluded that Petitioner had the intent to steal when he entered the residence. Accordingly, this Court cannot say that the

decision of the California Supreme Court to deny this claim was an unreasonable application of *Jackson*.

II - CALJIC No. 2.50

Petitioner argues that the modified version of CALJIC No. 2.50 given at the end of his trial violated his right to due process. This claim appears to have three parts: (1) the contention–raised on appeal–that the term "It may also" created a likelihood that the jury would interpret the instruction to permit an inference of bad character or a predisposition to commit crimes (Docket No. 25, Attach. 1 at 26-27; Lodged Doc. 1 at 7-19); (2) the contention that the instruction somehow prejudiced Petitioner's defense that he entered the house for shelter (Docket No. 25, Attach. 1 at 26); and (3) the contention that various trivial modifications to CALJIC No. 2.50 somehow confused the jury (Docket No. 25, Attach. 1 at 25-26). Respondent argues that the California Court of Appeal's decision denying the first part of Petitioner's claim was not an unreasonable application of clearly established federal law. Further, Respondent argues that the California Supreme Court's silent rejection of the latter two parts was not objectively unreasonable as the instruction did not impair Petitioner's defense, and the modified instruction was not confusing.

"It is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is also "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). To support a collateral attack on the judgment, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'" *Id*. This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985).

*1. Modified instruction did not allow the jury to infer bad character or propensity.*

The Court of Appeal addressed this claim in its reasoned decision affirming Petitioner's conviction:

> Defendant's complaint is that the trial court improperly added the word "also," to the first paragraph of CALJIC No. 2.50, telling the jurors evidence of other crimes "may not be considered by you to prove that Defendant is a person of bad character or that he has a disposition to commit crimes. It may also be considered by you for the limited purpose of [intent]." (Italics added.)
>
> Most of defendant's argument treats this snippet in isolation.
>
> However, in deciding a contention of instructional error, we consider the instructions as a whole, and we assume the jurors are capable of understanding and correlating all the instructions. (*People v. Haskett* (1990) 52 Cal.3d 210, 235; *People v. Laws* (1993) 12 Cal.App.4th 786, 796.)
>
> In context, the jury was instructed as follows:
>
> "[CALJIC No. 2.23] The fact that a witness has been convicted of a felony, or engaged in criminal conduct amounting to a misdemeanor, if this is a fact, may be considered by you for the purpose of determining the believability of that witness. The fact of such conviction or conduct does not necessarily destroy or impair a witness' believability. It is one of the circumstances that you may take into consideration in weighing the testimony of that witness.
>
> "[CALJIC No. 2.50] Evidence that the defendant committed crimes other than that for which he is on trial, if believed, may not be considered by you to prove that Defendant is a person of bad character or that he has a disposition to commit crimes. It may also be considered by you for the limited purpose of determining if it tends to show: The existence, or lack of the intent which is a necessary element of the crime charged. For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case. You are not permitted to consider such evidence for any other purpose, except as also instructed concerning credibility." (Italics added.)
>
> Defendant argues that, by adding the word "also" (italicized above) in the first paragraph of CALJIC No. 2.50, the trial court lightened the prosecution's burden and confused and misled the jurors, who would likely construe the instruction as permitting use of prior crimes to prove bad character or a predisposition to commit crime. Defendant complains the "also" neither immediately followed nor unambiguously referred back to the witness credibility instruction.
>
> We do not find the instructions confusing or misleading. The word "also" came after the trial court informed the jurors they could consider the evidence of other crimes for the purpose of assessing witness credibility. As such, the word "also" was appropriate.
>
> Defendant quotes from *People v. Mitchell* (1961) 197 Cal.App.2d 493: "Who can say with reasonable certainty that the jurors in their deliberation in the jury room paid no attention to the improper instruction of the judge and to their visible acknowledgement to him that they so understood the erroneous instruction to be the law." (*Id*. at p. 502.) However, the record in *Mitchell* showed the court told the jury "the People must prove [the defendant] guilty beyond a reasonable doubt. It is up to the defendant to prove his innocence.[¶] You understand that? [¶] (The jurors

> nodded affirmatively.)" (*Id*. at p. 497.) *Mitchell* is distinguishable, because there the challenged instruction was clearly wrong and was not saved by a conflicting instruction. Here, there was no such erroneous instruction.
>
> Even assuming the instructions in this case were ambiguous, we agree with the People that there was no prejudice under any standard. (*People v. Falsetta* (1999) 21 Cal.4th 903, 924-925 [any error in failing to instruct the jury on how to use propensity evidence was harmless under standard of *People v. Watson* (1956) 46 Cal.2d 818]; *People v. James* (2000) 81 Cal.App.4th 1343, 1360-1365 [applying harmless-beyond-a-reasonable-doubt standard to propensity instruction].)
>
> . . . .
>
> We conclude there was no prejudicial instructional error.

*Adams*, No. C043704, 2004 WL 1663960, *2-4 (Cal. Ct. App. July 27, 2004).

In context, it is readily apparent that the trial court was listing the appropriate and inappropriate uses of the other crimes' evidence. Breaking this list up as it did and returning to a proper use with the words "it is also" did not confuse the jury or create a risk that the jury might then use the prior convictions as propensity evidence. The Court cannot say that the decision of the Court of Appeal was an unreasonable application of clearly established federal law.

*2. Petitioner' shelter defense was not prejudiced by instructional error.*

Although Petitioner did not raise this as a separate claim on direct appeal, the Court of Appeal addressed this part of Petitioner's claim in its discussion of prejudice alleged to have resulted from the modified jury instruction:

> His sole defense was that he did not have the intent to steal when he entered the house. He did not have any burglary tools. He entered the house for shelter and did not form the intent to steal until he saw the money after washing his face and hair in the kitchen sink. He never went into the master bedroom, and the victim admitted none of her jewelry was missing. He voluntarily introduced evidence of his other trespasses in support of his defense that he entered only to seek shelter. The other trespasses and the entry into the victim's house were in the same time frame, when he was homeless. The prosecution referred to the prior burglary to negate the shelter defense. Any use of such evidence, argues defendant, was supposed to be strictly limited to determining issues of intent and credibility. Defendant argues the instruction fell short of guarding against a prohibited inference "once a criminal, always a criminal," and therefore it cannot be said beyond a reasonable doubt that the error did not make any difference in the outcome.
>
> However, defendant's prejudice argument is unpersuasive. The jury was expressly instructed not to use prior acts to infer bad character or disposition to commit crime. Moreover, defendant's claim that he entered an unlocked door was opposed by evidence of a forced entry (the jimmy marks). His claim that he washed his face and hair in the sink was opposed by the victim's testimony that she did not notice any water around the sink or floor. His point that he did not take jewelry from the bedroom was opposed by the victim's testimony that she heard a sound when she entered her home, suggesting defendant did not have time to explore other rooms of the house because the victim's arrival forced him to flee. In the other instances where defendant asserts he trespassed in order to seek shelter, the houses were vacant, unlike

> the occupied house at issue in this case. Although defendant portrayed this case as a critical need for shelter because he felt he was going to collapse, the prosecution's use of the prior burglary conviction was a fair response to defendant's claim that he was merely seeking shelter and did not urge on the jury an impermissible use of prior acts. The prosecutor in closing argument said to the jury: "The only two times that the Defendant has been caught entering occupied houses, he stole property. That's pretty indicative of what he went into those occupied houses to do. The two times that he was in a vacant house, perhaps he was sleeping. Perhaps he was looking for shelter, but he could tell they were vacant. One had a 'for rent' sign. The other one, they didn't have furniture. They had big appliances. Clearly, they are vacant. This house has furniture. You will look at the photos. You will see that in one of the photos, the victim testifies that the sliding blinds are shut in the picture, but they were at half slats on the day of the incident. Look at that picture and look where the table is. It's directly in front of that sliding glass door. Very clearly, that house was occupied. The only other time the Defendant has gone into an occupied house is to steal money. The time he goes into this clearly occupied house, he goes in to steal money. That was his intent on the day."

*Adams*, No. C043704, 2004 WL 1663960, *3 (Cal. Ct. App. July 27, 2004).

The jury was instructed on the elements of burglary, including that he was required to have the specific intent to steal at the time he entered the residence. RT at 170-71. The jury was instructed that it could not consider the prior burglary as evidence of bad character or propensity. Finally, the jury was appropriately told it could consider the conviction as to the element of intent. RT at 167; *see* Cal. Evid. Code § 1101(b) (admission of prior crime evidence not barred if relevant to prove a fact at issue, such as intent); *see also Spencer v. Texas*, 385 U.S. 554, 560 (1967) ("[t]he rules concerning evidence of prior offenses are complex, and vary from jurisdiction to jurisdiction, but they can be summarized broadly. Because such evidence is generally recognized to have potentiality for prejudice, it is usually excluded except when it is particularly probative in showing such things as intent"). In sum, the instructions appropriately permitted the jury to consider Petitioner's shelter defense and the prior burglary conviction offered in rebuttal. The Court of Appeal's conclusion that the instruction did not inappropriately prejudice Petitioner's shelter defense was not an unreasonable application of clearly established federal law.

*3. The instruction was not confusing.*

Petitioner contends that other miscellaneous modifications to CALJIC No. 2.50 rendered the instruction confusing. Specifically, he points to the omission of a phrase identifying the evidence to which this instruction applied, and the addition of the text italicized in the following excerpt:

> Evidence that the defendant committed crimes other than that for which he is on trial, if believed, may not be considered by you to prove that Defendant is a person of bad character or that he has a disposition to commit crimes. It may also be considered by you for the limited purpose of determining if it tends to show: The existence, *or lack of* the intent which is a necessary element of the crime charged. For

> the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case. You are not permitted to consider such evidence for any other purpose, *except as also instructed concerning credibility*.

*See* Docket No. 25, Attach. 1 at 25.

No phrase specifically identifying Petitioner's prior convictions was necessary. The phrase "or lack of" was clear and inherently fair, giving Petitioner's lack of intent defense a fair opportunity. The "except as also instructed concerning credibility" phrase was clearly an allusion to CALJIC No. 2.23, which immediately preceded the reading of 2.50. The instruction was clear, and this Court cannot find that the California Supreme Court's silent rejection of this claim was an unreasonable application of clearly established federal law.

III - CALJIC No. 2.23

Petitioner's argument here is essentially a rehash of his argument concerning CALJIC No. 2.50 and his contention that the prior conviction was admissible only as to credibility. Specifically, he contends the trial court erred by removing the word "only" and adding the word "conduct" to 2.23:

> The fact that a witness has been convicted of a felony, or engaged in criminal conduct amounting to a misdemeanor, if this is a fact, may be considered by you *only* for the purpose of determining the believability of that witness. The fact of such conviction *or conduct* does not necessarily destroy or impair a witness' believability. It is one of the circumstances that you may take into consideration in weighing the testimony of that witness.

*See* Docket No. 25, Attach. 1 at 29-30. As discussed *supra*, the trial court appropriately instructed the jury that the prior conviction was admissible as to Petitioner's intent. *See Spencer*, 385 U.S. at 560. Petitioner's claim that the addition of "or conduct" prejudiced him is equally unavailing. While Petitioner suggests that this alteration might have allowed the jury to consider "other conduct," he fails to identify what specific non-conviction conduct the jury might have considered. Further, the admission of relevant prior bad acts does not violate the Constitution. *See, e.g., Estelle*, 502 U.S. at 68-69 (evidence of battered child's syndrome stemming from uncharged prior conduct admissible to show intent). Accordingly, the Court cannot find that the California Supreme Court's silent denial of this claim was an unreasonable application of clearly established federal law.

IV - Ineffective Assistance of Counsel (Failure to Object)

Petitioner argues that his counsel rendered ineffective assistance when he failed to object the trial court's modified CALJIC instructions 2.50 and 2.23. Respondent argues that this claim fails because the objections lacked merit.

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

As the trial court did not err in giving either CALJIC 2.50 or 2.23, Petitioner has demonstrated neither that his counsel's performance was deficient, nor that he was prejudiced thereby. Accordingly, with regard to the failure to object to CALJIC 2.50, the Court cannot find the decision of the Court of Appeal was an unreasonable application of clearly established federal law. With regard to CALJIC 2.23, this Court cannot find the California Supreme Court's silent rejection of this claim to be an unreasonable application of clearly established federal law.

V - Denial of *Marsden* Motion

Petitioner alleges that the trial court denied him his Sixth Amendment right to counsel when it denied his *Marsden* motion for new counsel. Petitioner alleges that he informed the trial court that: (1) counsel failed to obtain a fingerprint expert; (2) counsel failed to look for witnesses; (3) a critical note sent to the public defender's office was not in his file; (4) counsel failed to investigate a false identification lineup; (5) counsel failed to investigate the court's retention of Petitioner's tax returns; (6) counsel failed to investigate whether Petitioner's arraignment on unrelated drug charges was tardy; and (7) he wanted to hire private counsel. Docket No. 25, Attach. 1 at 33-34. Respondent has limited itself to citation of the applicable standard as the California Court of Appeal denied it's request for a copy of the *Marsden* transcript. Lodged Document No. 9.

"A State has a duty to provide an indigent defendant with effective assistance of counsel through his first appeal." *Hendricks v. Zenon*, 993 F.2d 664, 669 (9th Cir. 1993) (citing *Douglas v.*

*California*, 372 U.S. 353, 358 (1963)). In California, a criminal defendant who is dissatisfied with court-appointed counsel must be permitted to state the reasons why the defendant believes the attorney should be replaced. *See People v. Marsden*, 465 P.2d 44 (Cal. 1970). When a defendant seeks to discharge counsel and substitute another attorney on the ground of inadequate representation, the court is required to allow the defendant to explain the basis for the motion and relate specific instances of the attorney's deficient performance. *See id*. Denial of a *Marsden* motion can only amount to a constitutional violation where there was an irreconcilable conflict between the defendant and counsel which prevented effective representation. *See Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc).

The Court has reviewed the transcript of the *Marsden* hearing and finds that the California Supreme Court's silent denial of this claim was not an unreasonable application of clearly established federal law. The trial court gave Petitioner an ample opportunity to air his grievances. The grievances brought forward by Petitioner were either misinformed or nonsensical. Petitioner's grievance regarding the fingerprint expert was misinformed - the defense had obtained an independent analysis of the exemplar used by law enforcement for match purposes and the fingerprint evidence lifted from the house. The trial court explained that the delayed arraignment in the unrelated drug possession case was an error without a remedy as Petitioner was in custody for a seven-day work release rather than the new drug charge. Petitioner's other grievances were nonsensical, *e.g.*, failure to look for witnesses where there were none, failure to investigate a lineup identification when there was no identification other than the fingerprint analysis, and retention of Petitioner's tax returns. None of Petitioner's grievances by themselves or in combination demonstrated an irreconcilable conflict with appointed counsel.

Petitioner's allegation that the trial court did not allow him to hire his own private attorney also fails. "The qualified right of choice of counsel applies only to persons who can afford to retain counsel" *Schell*, 218 F.3d at 1025 (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). Acknowledging that he was homeless and indigent, Petitioner suggested that his mother might be willing to pay for a private lawyer, although she had apparently told him that she had spoken with appointed counsel and thought he was sincere and doing a good job. The trial court asked the clerk to attempt during the recess to call Petitioner's mother to ascertain whether she was in fact willing to hire a private lawyer. After the recess neither the trial court nor Petitioner

raised the subject again on the record. First, the Court notes that it was never the trial court's responsibility to arrange for funding of a private lawyer for Petitioner. *See id*. at 626 (Sixth Amendment protection does not exceed defendant's right to spend his own money in securing counsel). If Petitioner's mother was willing to pay for a private lawyer, it was Petitioner's responsibility to make arrangements for representation. Second, Petitioner has not brought any evidence forward, such as an affidavit, that would suggest that his mother would have in fact paid for a private lawyer. Nor has Petitioner even alleged that a further delay would have allowed him to make such arrangements. Given Petitioner's indigence, the trial court's failure on the first day of trial to allow substitution of an unknown private attorney who Petitioner asserted his mother might be willing to pay for did not violate Petitioner's right to choice of counsel. *See Schell*, 218 F.3d at 1025-1026.

VI - Ineffective Assistance of Counsel (Decision to Testify)

Petitioner argues that his trial counsel rendered ineffective assistance by failing to advise Petitioner against testifying at trial. He claims to have told counsel repeatedly that he did not want to testify. Respondent contends that the Supreme Court's silent denial was not objectively unreasonable because counsel's strategic choice to advise Petitioner to testify was the only route for mounting a defense.

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

The record demonstrates that counsel gave Petitioner excellent advice. The prosecution had overwhelming evidence against Petitioner, *e.g.*, signs of forced entry and Petitioner's fingerprints on both the sliding glass door and the glass jar from which the money was stolen. Counsel accordingly advised his client to take the prosecution's deal that would have resolved the burglary charge in this case as well as the drug charge in the trailing case for a total of five years and four months. RT at

17-18. Petitioner's exposure on the burglary charge alone was nine to seventeen years. RT at 19. As was his right, Petitioner elected to proceed to trial. RT at 19.

Once Petitioner chose to proceed to trial, the only plausible defense was to put Petitioner on the stand and attack the element of intent. Given the physical evidence connecting Petitioner to the crime, there was no plausible way for the defense to simply argue reasonable doubt. Petitioner was aware before he chose to take the stand that it would open the door to evidence of his prior criminal trespasses and the prior burglary. RT 75-78. Counsel's performance was not deficient, nor can Petitioner show prejudice given the overwhelming physical evidence of guilt. Accordingly, the Court cannot find that the California Supreme Court's silent denial of this claim was an unreasonable application of clearly established federal law.

VII - *Miranda* Violation

Petitioner claims that his Fifth Amendment rights were violated when the trial court failed to advise him of his *Miranda* rights prior to Petitioner taking the witness stand at his trial. Petitioner's argument fails as the warning requirement established by *Miranda v. Arizona*, 384 U.S. 436 (1966), applies only to custodial interrogation by law enforcement officials. *See, e.g., Rhode Island v. Innis*, 446 U.S. 291, 297-99 (1980). Accordingly, the Court cannot say that the California Supreme Court's silent denial of this claim was an unreasonable application of clearly established federal law.

VIII - Undue Influence

Petitioner argues that he was deprived of his Sixth Amendment right to a jury trial when his counsel placed a large lemon next to Petitioner on the table during some portion of his trial. He submits that counsel prejudiced the jury by subliminally communicating that his client was "a lemon," *i.e.*, something "malfunctioning" or "undesirable." Counsel allegedly told Petitioner that the lemon was for a cold counsel was fighting. Respondent argues that the California Supreme Court's silent denial was not objectively unreasonable as the law assumes the jury obeyed the instruction to make its determination based on the evidence admitted at trial.

"[T]he adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of an advocate.'" *United States v. Cronic*, 466 U.S. 648, 656 (1984) (quoting *Anders v. California*, 386 U.S. 738, 743 (1967)). "Indeed, an indispensable element of the effective performance of defense counsel's responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation." *Id*. (quoting *Ferri v. Ackerman*, 444 U.S. 193,

204 (1979)). Where counsel has ceased acting as an independent advocate prejudice will be presumed. *Cronic*, 466 U.S. at 656. However, counsel's "failure must be complete" for the *Cronic* presumption of prejudice to apply. *Florida v. Nixon*, 543 U.S. 175, 190 (2004) (citing *Bell v. Cone*, 535 U.S. 685, 696-97 (2002). If the failure is not complete, the ordinary test under *Strickland* applies, requiring a petitioner to show both counsel's deficient performance and prejudice therefrom. *Id*. Interpreting *Cronic*, the Ninth Circuit has found that a defense counsel ceases acting in the role of an advocate when she concedes to the jury that certain factual allegations against her client have been proven beyond a reasonable doubt. *See United States v. Swanson*, 943 F.2d 1070, 1074 (1991). However, isolated statements, or the strategic concession of some aspect of the case, do not equate to a complete failure to test the prosecution's case. *See, e.g., Florida*, 543 U.S. at 190-91; *Hovey v. Ayers*, 458 F.3d 892, 907 (9th Cir. 2006) (isolated statements in closing argument that did not amount to a concession of guilt fell short of a complete failure).

Petitioner alleges without any evidence that counsel placed a lemon next to him during some portion of the trial. Even assuming this fact and Petitioner's symbolic interpretation, the Court finds that *Strickland* would still govern. Counsel's subliminal comment that Petitioner was somehow malfunctioning or undesirable falls far short of a concession of guilt or some other complete failure to test the prosecution's case. Quite to the contrary, despite the overwhelming evidence of Petitioner's guilt, counsel put on a brave face and vigorously attacked the prosecution's case by focusing on the intent element and arguing that his ill and homeless client was simply seeking shelter when he entered the victim's residence. Further, as discussed *supra*, any error was harmless as the evidence against Petitioner was overwhelming. Accordingly, the Court cannot find that the California Supreme Court's silent denial of this claim was an unreasonable application of clearly established federal law.

**CONCLUSION**

Petitioner's application must be denied as his claims are without merit. Further, as no reasonable jurist could debate whether the petition should have been resolved in a different manner, the Court declines to issue a Certificate of Appealability.[2] Any further request for a Certificate of

[2] A district court may grant a certificate of appealability only if a petitioner makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a

Appealability must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's application for writ of habeas corpus is DENIED;
2. The Court declines to issue a Certificate of Appealability; and
3. The Clerk shall enter judgment accordingly.

Dated this the 11th day of March 2009.

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
United States District Judge

---

constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 482 (2000) (internal quotation marks and citations omitted).